The first case on the call this morning, Agenda No. 7, is 123936 McCormick Foundation v. Gallagher. Mr. Shanefield, are you ready? You may proceed. Is it Shanefield or Schoenfeld? I pronounce it Schoenfeld. My grandfather in Cincinnati pronounced it Shanefeld, so it's finally here. I'm probably closer to your grandfather's age. May I please report? I am David Schoenfeld, representing the plaintiff appellants in this case, the Robert R. McCormick and Cantini Foundations. The foundations brought this malpractice and negligence action to recover the value of insurance coverage that their broker, Arthur J. Gallagher, failed to procure on their behalf. Gallagher's negligence has forced the foundations to fend for themselves against a series of enormous lawsuits filed against them and thousands of other former shareholders of Tribune Company related to Tribune's 2007 LBO transaction. Gallagher has never participated in any way in the foundation's thus far successful defense. Nevertheless, Gallagher seeks discovery of the foundation's privileged communications and attorney work product concerning the foundation's defense of the LBO lawsuits. The appellate court ruled that Gallagher is entitled to the foundation's otherwise privileged communications based on the narrow and controversial common interest exception discussed in the court's waste management decision in 1991. The appellate court's ruling is erroneous for three principal reasons that I will discuss this morning. First, the appellate court verified ignoring the absence of a special relationship between the insurer and insurer that created the common interest identified in the waste management decision. No other appellate court in Illinois has expanded waste management's common interest exception beyond its origin in the insurer-insurer relationship. The court also erred by making the unprecedented leap of concluding that the foundations gave Gallagher an interest in their confidential defense communications simply by suing Gallagher for malpractice. And third, the appellate court erred by confusing the waste management common interest exception with the much broader but fundamentally different joint defense non-labor principle. These errors would expand the narrow waste management exception dramatically. The appellate court decision would destroy attorney-client privilege and work product protection in a huge range of cases where parties currently expect to be able to confide in the counsel and counsel expect to be able to protect their confidential work product from the prying eyes of opponents. Malpractice plaintiffs and parties seeking contribution or indemnification would lose privilege in their defense of third-party claims. Hearings-worth assurances would demand privileged documents from counterparties. Co-defendants could invade each other's defense files. The court should avoid this disruption by reversing the lower court's decisions in this case. Let me turn now to the first error I identified. Waste management's common interest exception does not apply to this poker malpractice case. In waste management, the insurers sought privileged attorney-client communications and work product despite the fact the insurers denied responsibility to pay for waste management's defense or settlement of the underlying environmental claims. Although the insurers had no attorney-client relationship with waste management's counsel, the court identified two exceptions to the privilege on the specific facts of the waste management case. First, the parties in that case had a cooperation agreement that required waste management to cooperate with the insurers in the defense and settlement of claims against waste management. Gallagher and the foundations agree on this case that there is no such cooperation agreement between them, so this form of waste management is irrelevant in the case of the court. The second ground on which waste management applied the privilege or an exception to the privilege was that the court found that the insurers were entitled to waste management's privileged information because the parties had a common interest in the defense of the claims against waste management. This is the holding that the appellate court erroneously applied to this case. Prior to the appellate court's decision in this case, the common interest and privilege exception had been found to exist in only two circumstances. The first of those arises when a client shares confidential information with its attorney knowing the attorney also represents another client. In that situation, the courts have long held that the first client cannot reasonably expect that the information that's shared with the common attorney will be privileged in the subsequent dispute between the clients. This common representation of two clients did not exist in waste management because the insurers had refused to defend waste management. Similarly, in this case, there is no actual common representation because Gallagher has done absolutely nothing to defend the foundations. In the absence of an actual common representation in waste management, the court turned to a second basis for invoking the common interest exception. The court held that the special relationship between insurers and insurance arising from the terms of their insurance contracts created what it described as a commonality of interest despite the lack of an actual common representation. The court also wrote that to deny insurers access to waste management's privileged communications about the defense of the environmental claims, quote, would defeat the purpose of the insurance policies and disregard considerations of public policy which require encouragement of full disclosure by an insured to its insurer, close quote. Waste management court cited a number of decisions from outside Illinois that described the essential elements of the special relationship between an insurer and an insured that justified an exception to the attorney-client privilege and work product doctrine in that particular case. For example, in the International versus Peabody, the court noted that the fiduciary character of the insurer-insured relationship justified treating the insurance counsel as jointly representing the insurer in order to prevent the insurer from taking unfair advantage of the insurer in settling an underlying case. In addition, the court cited the Southeastern Pennsylvania Transportation Authority case in which the insurance policy it issued expressly required the insurer to furnish a complete investigative report of each suit or claim to the insurer. The waste management insurers pointed out to the court that their policies, like that in Southeastern Pennsylvania, contained a condition that expressly required waste management to give the insurer all information and assistance as the insurer may reasonably require. It's important to note, contrary to Gallagher's arguments in the briefs, the waste management insurers characterized this provision as distinct from the cooperation clause in which the court also ruled, which is not present here, and argued that this requirement to disclose all information and assistance the insurer may reasonably require contributed to the creation of what they described as a partnership, that there were partners with the insurer, with waste management, and that they had a unity of interest as a consequence. They treated this, and portrayed it as a knowing waiver of privilege as a part of the relationship between parties. In fact, they pointed out that waste management did provide privilege reports to the insurers until the waste management sought reimbursement of defense expenses, and the insurers refused. So it was based on these fiduciary contract principles governing the special relationship between insurer and insurer, and these specific facts about the policies and the conduct of the parties in waste management that the court held the policies created a, quote, commonality of interest that overrode the fact that the insurers did not actually depend on waste management. This narrow and unique decision has been much debated, as the court is aware, since 1991. This case before us today is fundamentally different from waste management in every respect I've just described. There is no sound basis for extending what the waste management common interest exception to this broke or malpractice case. Indeed, the facts of this case illustrate clearly why no Illinois appellate court has ever extended waste management's common interest exception beyond the insurer-insurer relationship. The foundations in Gallagher have never shared defense counsel in the LBO litigation. Gallagher did not retain counsel for the foundations. Gallagher has paid none of the foundations' legal costs. Gallagher has had no contact whatsoever with the foundations' counsel, except, of course, to subpoena them for their confidential records. There is no special relationship between the foundations and Gallagher that would create a commonality of interest in the absence of an actual common representation. The foundations never agreed to share privileged information with Gallagher. There is no cooperation agreement. There is no insurance agreement. There is no agreement to notify Gallagher of claims, no agreement to disclose the facts of those claims, no agreement to report the status of the defense of those claims. There are no contractual undertakings of any kind indicating that the foundations ever intended or ever expected to waive privilege of shared confidences with Gallagher, and the foundations can gain absolutely no advantage in doing so. Gallagher, for its part, undertook none of the duties that would entitle an insurer to its insurance-privileged communications. Gallagher undertook no obligation to defend or indemnify the foundations against third-party liability. Gallagher undertook no obligation to investigate the claims against the foundations. Gallagher undertook no obligation to settle the LBO claims fairly, because an insurer wants to know more. Gallagher expressly disclaims the fiduciary and good-faith obligations that the parties argued to the court were essential in waste management, obligations that would constrain an insurer from using its insurance-privileged information in a way that would increase its insurance exposure to liability. Instead, Gallagher plainly deems itself free to place the foundation's assets in peril in order to advance its own interests in this litigation. Gallagher thus disclaims all of the obligations an insurer would have to its insurer. Gallagher asserts only the rights of an insurer to discover its insurance-privileged information. As a consequence, Gallagher and the foundations have never had a special contractual relationship that created the common interest identified in waste management. The appellate court's reliance on waste management, despite all of these distinguishing facts, represents a substantial and unwarranted expansion of the common interest exception. To extend waste management's common interest exception to this broker malpractice case, in the absence of the insurer-insurer relationship relied upon by the waste management court, would obviate attorney-client privilege and work product protection in many situations where the parties today expect confidentiality. Any defendant in a contribution, indemnity, subrogation, or malpractice action might be better off if its opponent succeeded in defending an underlying liability to obtain its opponent's privileged defense funds. Herein towards insurities could demand privileged communications regarding the common party's defenses. This would be an unprecedented and disruptive expansion of the common interest exception. Let me turn now to the second error identified at the outset. The appellate court erroneously held that Gallagher was entitled to the foundation's privileged defense communications because the foundation sued Gallagher for malpractice. Prior to the foundation's malpractice claim, Gallagher had no interest of any kind in the foundation's potential liability. Gallagher only agreed to indemnify the foundation for Gallagher's own negligence, not for the foundation's liability to third parties. The only thing Gallagher ever did with respect to the underlying LBO litigation was fail to procure insurance for the foundation. In a telling contrast, the waste management court recognized that the insurers and insurers in that case initially had a non-adversarial common interest based upon their contractual relationship. This period of non-adversarial common interest has never existed in this case. Nevertheless, the appellate court held that by suing Gallagher, the foundation has given Gallagher a stake in the LBO litigation because Gallagher's liability to the foundation for its malpractice could be reduced if the foundation succeeded in defending themselves in the LBO litigation. The appellate court held that this prospect created a common interest in the foundation's defense and entitled Gallagher to obtain the foundation's privileged communications and attorney work product related to their defense. The party's relationship as it concerns the LBO litigation has been entirely adversarial. It was created solely by this lawsuit. It has existed only during the pendency of this lawsuit. In fact, Gallagher and the foundations are directly adverse as to the conduct of the underlying litigation. Gallagher refused the foundation's proposal to stay this case until Gallagher's discovery conduct could no longer threaten the foundation's defense in the LBO litigation. Gallagher's discovery demands now further demonstrate his willingness to advance his own interests at the foundation's expense in the LBO litigation. Gallagher openly seeks to use the foundation's privileged information to support allegations Gallagher cribbed from the foundation's opponents in the LBO litigation, upon which they seek to recover over a billion dollars from the foundation. In waste management, the court held on narrow grounds that the insurers were entitled to obtain privileged communications despite the breach in the insurance agreements. In contrast, the appellate court here held on expansive grounds that Gallagher is entitled to the foundation's privileged communications because it breached the students of the foundations. There is no basis in waste management or in common sense to reward Gallagher's breach of his duties toward the foundations with access to their privileged communications with their attorneys. In addition, to extend waste management's common interest exception to strictly adversarial relationships like this one would further distort the application of the attorney-claimed privilege and work product protections in Illinois. Parties alleging attorney or broker malpractice claims, parties with potential contribution or indemnification claims, would now face a Hobson's choice in asserting those claims. They would have to choose between asserting their claims and surrendering their privileges or preserving their privileges. For example, a construction contractor sued in a workplace accident might have a potential contribution claim against a subcontractor as a joint torturer. The contractor, however, would now be forced to relinquish its privileged communications with its defense counsel and their work product merely because the success of its defense might coincidentally reduce the liability of the subcontractor. This result would expand the narrow waste management exception to a great many cases in which the parties of counsel now reasonably expect confidentiality. Attorney to the Third Era identified. The appellate court further identified by premising its ruling on the body of law governing a fundamentally distinct concept of joint defense, not labor. Under this doctrine, co-defendants engaged in joint defense may share discreet confidences without waiving privilege against their common opponents. The joint defense non-labor doctrine thus extends the privilege by agreement among the co-defendants. This difference, the difference of this concept versus the waste management concept is clearly explained in detail in the Selby and Neal Day case by the First District. Nonetheless, by erroneously citing this body of law as support for a blanket exception to privilege in this case, the appellate court's opinion would throw open to discovery the entire defense files of co-defendants who chose only to share discreet communications. So for these reasons, the lower courts plainly erred in ordering the disclosure of the foundation's privilege communications and work product documents. The foundation respectfully requests that the court reverse that decision of the lower courts and demand for entry of the protective orders and other relief sought by the foundations in the trial court. Thank you. Thank you, Mr. Schoenfeld. Mr. Layden. It please the court, Michael Layden, on behalf of Arthur J. Gallagher Risk Management Services. In waste management, this court identified two separate and independent reasons for why the attorney-client privilege did not apply. First, this court held that the attorney-client privilege did not apply because there was a cooperation clause in the party's insurance contract. Second, this court held that the common interest doctrine rendered the privilege inapplicable. This court described the common interest doctrine as an equally compelling basis to order the production of documents in question, meaning that the commonality of interest doctrine is a separate basis for why the privilege does not apply. In discussing the common interest doctrine, this court analyzed whether the parties in waste management shared a common interest in defeating or settling the underlying litigation. This court found that the parties shared the requisite common interest because the insurer there ultimately might be liable, like Gallagher, for paying a verdict or settlement in the underlying litigation. Given that common interest in the outcome of the underlying litigation, this court held that the materials in question from the underlying litigation were prepared for the mutual benefit of both parties. Excuse me, Mr. Layden. Waste management, it was within its analysis of the common interest issue that it seems to limit its analysis based on this special relationship shared by the insured and the insurers, and specifically noted, quote, that they are in privity of contract. So it seems like that is why it could be said that counsel for the insurers could be said to represent both the insurers and the insurers because of this privity of contract situation. So first off, Your Honor, the parties here are in privity of contract. We have a contract that requires us to indemnify them for our malpractice that they allege, which means that at the end of the day, they prove that we're liable. We ultimately have to cover them the same way that Chubb would cover them under the Philadelphia contract. Moreover, I think it's important to recognize that in the waste management case, the insurer basically made that same argument. In waste management, the insurer explicitly rejected its obligations to the insurer, including its duty to indemnify, defend, or participate in all the litigation. The insurer there completely rejected all of its obligations as an insurer. The insured then argued, therefore, to the court in waste management that the common interest doctrine should not apply given the insurer's refusal to honor any of the obligations that arise from the insurer-insurer relationship. This court explicitly rejected that argument at pages 194 to 195 in waste management. In doing so, this court reiterated, it is the commonality of interest which create the exception, not the conduct of the litigation. In sum, even though the special relationship of insurer-insured was expressly disavowed in waste management, the court held that the common interest doctrine applied. It held that because at the end of the day, the insurer there would be liable potentially for the insured's liability in the underlying litigation. That's the same thing here. At the end of the day, if they succeed, they seek to impose on us the $25 million worth of liability that they would have had coverage for from the chub under that policy. What are we to do, Mr. Layden, with all of the treatises cited in waste management discuss the common interest doctrine in terms of two or more clients who retain or consult the same lawyer? The treatises in waste management do discuss this, but this court in waste management went on and said that in waste management, the common interest doctrine applied even though the insurer there had neither retained counsel for the insured nor was even in direct communication with them. This court's holding in waste management already specifically addresses that. That's not a requirement that they have to be in a joint retention or even in communication. That was an explicit holding in waste management. If we agree with you, would the common interest doctrine then extend to any case where one party may be required to indemnify another? It would be in a situation as long as it's like this situation, and I think it's a very narrow situation, where a party is specifically liable for that underlying conduct. If they're responsible for that underlying conduct, if they're responsible for paying the judgment in that underlying litigation, then the common interest doctrine would apply because as the court said in waste management, the counsel there represents both parties' interests and they're not privileged from them. So in that instance, yes, but it's a narrow situation. In this case, to be clear, the foundations have argued time and again that we are their de facto insurer, that we stand in the shoes of Chubb for purposes of this case and that we are just like the insurer. They can't have it both ways. They can't have made that argument to the appellate court in a prior unrelated appeal and now walked away from it. They are saying we are the insurer. Part of the reason they say that is because we have that indemnity obligation under our contract between us and the foundations. The foundations' special relationship argument should be rejected for the further reason that it is a transparent effort to require the existence of a duty to cooperate in order for waste management's common interest doctrine to apply. But that is contrary to this court's decision in waste management. After discussing the cooperation clause exception to the privilege, this court described the common interest doctrine as an equally compelling and equally significant basis for why the privilege did not apply. Nevertheless, the foundations argue that the special relationship of insurer and sure ed, including specifically the duty to cooperate, must be present for the common interest doctrine to apply. But that would mean that the common interest doctrine could not apply absent a contractual duty to cooperate. In other words, there would have been no reason for this court to identify the common interest doctrine as an equally compelling exception to the privilege, since it separately could not exist in the absence of a contractual duty to cooperate. Now, the foundations, as they did in their brief, suggest that the appellate court's decision constitutes some sort of dramatic expansion of the common interest doctrine. That's not true. The appellate court found that the common interest doctrine applies here for the exact same reason that it applied in waste management, because Gallagher potentially may be liable for the defense and liability costs arising from the underlying litigation. Moreover, the foundation's suggestion that the appellate court somehow expanded waste management's common interest doctrine is betrayed by its repeated assertion that Gallagher serves as their de facto insurer and stands in the shoes of Chud in terms of providing the foundation's coverage for the underlying litigation. Is there a commonality of interest in the same way as where we know that an insurer has a duty to indemnify and defend from the beginning? Well, we've had, since the beginning, a duty to potentially indemnify pursuant to our indemnification agreement between us and the foundation. But you disclaimed all such duties, right? We do disclaim those duties in this case. In this case, we're at first, and we oppose that. But that's the same thing as was the case in waste management. The insurer there, from the very beginning, rejected its obligation to indemnify. Because of that disclaimer, do you think that the foundation ever had any reason to think that their attorneys would have to share their confidences with Gallagher? I think if they were aware of this opinion, they certainly should. This opinion was clear that if two parties potentially share a liability for the underlying litigation, as is the case here, and as is the case in waste management, in that instance, there's no privilege as between them. In that instance, there's an expectation that those communications, since they relate to that common matter that they're both fighting and hoping to prevail against, aren't privileged from one another. They may be privileged from the rest of the world, but not from each other. But as a result of that disclaimer, could it be said that you weren't going back to the privity of contract argument? I mean, you disputed that you had the duty to indemnify, right? We have disputed the duty to indemnify. But once again, Your Honor, that's the position. Where's the privity? I'm sorry? The privity is in the contract. We're in privity of contract with them, where we have agreed to indemnify them. The fact that we now dispute that is true. So out of one side of your mouth, you say you don't have a duty to indemnify, but you are in privity of contract in case you're found to have a duty to indemnify. No, what I'm saying, Your Honor, is we're in privity of contract because we executed a contract and we agreed to indemnify. Just like the insurer in waste management agreed an insurance contract to indemnify the insurer there for those environmental claims, that the insurer in that case disputed those obligations from the start. It never participated in the case. It didn't participate in the settlement. It didn't defend them. It walked away. It disavowed all of its obligations. We're on a complete parallel track here. Just like they've said, they've argued below multiple times that this case is just like the typical coverage case, which is what was the circumstance in waste management. Now, contrary to the Foundation's suggestion, the appellate court did not rely upon the joint defense non-waiver doctrine in determining that the common interest doctrine applies here. In its opinion, the appellate court noted that in an earlier decision, Allianz v. Guyton, it and other out-of-state courts had been critical of waste management. The appellate court proceeded to note that that criticism of waste management had been unfair. In the course of that discussion, the appellate court referenced certain case law and secondary sources, including authorities that discussed the joint defense non-waiver doctrine. Following that discussion, the appellate court clearly signaled that it was returning to a discussion of this case where at page 15 it explicitly stated that it was now turning back to the matter at hand. Then at paragraph 15, which contains the appellate court's actual holding, the appellate court analyzed whether Gallagher would potentially be liable for the Foundation's defense and liability costs arising from the LDO litigation. Finding that Gallagher potentially bears such liability, the appellate court held that the requisite commonality of interest exists here. At no point in paragraph 15 or any other part of this decision did the appellate court suggest that Gallagher is entitled to the production of documents at issue here pursuant to the joint defense non-waiver doctrine, nor is Gallagher a part of that. In short, the Foundation's effort to focus on dicta from the appellate court's decision is a red herring. The Foundation's other argument that the common interest doctrine does not apply here because Gallagher never had what they call a non-adversarial interest in the Foundation's defense is without merit. To be clear, Gallagher doesn't have an adversarial position as relates to the LDO litigation. The only place it's adversarial is in this case, which is the same as it was in waste management. Moreover, the circuit court in this case has made clear that it will put forth a protective order to protect the disclosure of documents to any third parties and that it will not address any issues that overlap with the LDO litigation until the LDO litigation is resolved. Moreover, there's nothing in the text of waste management that provides that parties must share a non-adversarial common interest in the underlying litigation that predates the dispute between the parties. In waste management, the insurer had to provide liability coverage or participate, excuse me. In waste management, the insurer had refused to provide liability coverage or participate in the defense of the underlying lawsuit. In other words, the insurer and insured in waste management were already in an adversarial position at the time the insured was communicating with its counsel in the underlying litigation. Despite that adversarial position as to coverage, this court in waste management found that the common interest doctrine applied. In so holding, this court emphasized that it is the commonality of interest in defeating the underlying litigation that controls. Since Gallagher, like the insured in waste management, bears potential liability for the underlying LDO litigation, the requisite commonality of interest exists here. At the end of the day, the foundation's argument asked that this court ignore principles of stare decisis and overrule this court's rationale for the common interest doctrine in waste management. Almost 30 years ago, this court decided in a 6-0 opinion written by former Justice Freeman that the common interest doctrine applies when the party seeking the disclosure of documents potentially bears liability for the underlying litigation. There is no reason that Gallagher, excuse me, there is no question that Gallagher bears that same liability. They seek to impose on us that $25 million in coverage responsibility that Chublett would have had to provide for the underlying litigation. Yet the foundation's asked that this court rewrite waste management to add a new requirement that is not found in waste management. But doing so would mean that the common interest doctrine cannot apply unless a contractual duty to cooperate exists, even though this court described the common interest doctrine as an equally compelling basis for the production of the documents that issue there. Foundations do not and cannot explain how principles of stare decisis can be ignored, and that almost 30 years later, new requirements can be engrafted into this court's decision in waste management that would essentially render the common interest doctrine indistinct from the cooperation clause exception. This court, and every court that's interpreted it, has made very clear that the cooperation clause exception is its own separate exception, and the common interest doctrine is its own separate exception. What they're trying to do is to fundamentally merge them together, even though this court more than 30 or 30 years ago held that they're two separate, indistinct bases for why the privilege does not apply. Counsel, if we were to find that the common interest doctrine or exception to the attorney-client applies here, would it mean that this would also apply in other professional negligence cases? It would only apply in the most unique of circumstances. It would have to be almost a case that's directly analogous to this, where the party that's being sued, as we are being sued, bears potential liability for that underlying litigation. It would be the most rare circumstance. At the end of the day, while they want to talk about this case being a dramatic expansion, the only difference is we're a broker, and in that case it's an insurer, but all the other facts are exactly the same. As they've said, we stand in the shoes of the insurer. So it wouldn't expand to all sorts of malpractice actions. On behalf of Gallagher, we respectfully request that this court affirm the decisions of the lower court in order of the production of documents pertaining to the defense of the LDO litigation. Thank you. Thank you, Mr. Layden. Bye. Thank you, Your Honors. There are myriad cases in Illinois right now in which a party would potentially benefit from a counterparty's success in an unaligned case. Malpractice defendants in broker and attorney-client cases are in that exact position all across the state today. And the plaintiffs in those cases do not expect that they are laying their privilege in the underlying defense of an unaligned case simply by bringing that malpractice case. Every indemnitor is ultimately liable for a loss in indemnity. And yet all across the state today, counsels are assuming that they can protect their work product from the prying eyes of opponents, and the parties asserting those indemnity claims believe the same thing. And the appellate court's decision, the rule that they announced, throw all of that into chaos. This court has an endless stream of cases trying to live the parameters of the expansion that this rule would work in contribution cases, indemnity cases, malpractice cases, maturity cases, guarantee cases. They would all be affected by this rule because they could all be potentially liable for their opponents or their counterparts' underlying liabilities. Justice Thomas asked questions about the relation, the denial of the responsibilities by Gallagher and whether that was the same in the waste management case. Mr. Laidman argued that because the insurers of waste management had denied coverage for a specific claim, that they had disclaimed all of their obligations and policies. That is simply not true. They had denied coverage for specific claims. But there was no question that they had insurance contracts of the kind described in detail by the Waste Management Court and by the cases that it cited, which created a series of obligations, interlocking obligations between the parties, establishing these fiduciary and good faith obligations, establishing disclosure obligations, and establishing all of the elements of the special relationship that was identified by the court. And none of that was changed by the denial of coverage for a specific set of claims. Those contracts and those relationships created by those contracts continue to exist. Here, the contracted issue, Mr. Laidman says, well, we're in privity because we have a contract. That contract, the only thing it says about the relationship between the parties is that they disclaimed any fiduciary obligation to the foundations. With respect to the indemnification term, it is fundamentally different. The indemnification term knows the issue of waste management, and it is an issue between insurers and insurers. There, it is true in the insurer context, insurers do assume responsibility for the liabilities of their insurers. It's not so here. Gallagher does not assume the liabilities of the foundations. Gallagher agrees to indemnify for its own negligence. That negligence can only be established by adversarial actions such as this malpractice case. So it defines the relationship between the parties with respect to the underlying liabilities as an adversarial relationship. And it does not entitle them to obtain our privileged information because of this adversarial relationship. And that's a fundamental error that the appellate court made below. Mr. Layden talked about the difference between the cooperation clause and the insurer-insurer relationship identified in the waste management case and argued that there would be no reason to talk about the cooperation clause if our analysis of the insurer-insurer relationship was correct. That is not so. There are many cases evidenced by the cases that you cited in our briefs in which there are non-insurance indemnification agreements that have cooperation clauses. So it made sense for the court to discuss the cooperation clause separately in the insurer-insurer circumstance. The cooperation clauses are typically associated with indemnification agreements and that is something that Gallagher could have negotiated had it wanted because it claims to indemnify us had it wanted to obtain information about the defense of underlying claims that we might have tended to them for indemnification. They had an opportunity to negotiate the cooperation clause. Instead they waited and they are asking the courts now to impose that obligation by judicial fiat despite their neglect. Let me turn very briefly to the question of the appellate court's reference to our assertions that Gallagher stands on the shoes of the insurer for purposes of this malpractice act. That refers back to the briefing on the interpretation of the policies at issue and whether or not the exclusion that was found in the policy that Gallagher procured for us was actually the same as an exclusion  they convinced us to relinquish, which would have, as it turns out, recovered the claims at issue. Questions of interpretation of insurance policies are governed by a canon of interpretive rules that this court and others have developed over the years which applies specifically to insurance policies. It made sense to point out that Gallagher for purposes of contract interpretation stood on the shoes of the insurer for arguing the interpretation of the policies. When the court cited and wrote the language that Gallagher relies on it cited two cases. One of which held that a broker who fails to procure insurance is potentially liable to its customer. The second held that the value, the measure of that liability is the value of the insurance that the broker failed to obtain. Neither of these cases says anything about the sharing of privileged information, the waiver of privilege in information. It has nothing to do with the facts of this case or the issues of this case as it stands today Those references don't do anything to undermine the defense or the privilege. This is not a case where we simply ask the court to revisit waste management. The court doesn't have to do anything to reverse the law. The court has simply to conclude that waste management which has been a very controversial decision for 30 years should not be extended in this case in a way that would extend the common interest exception identified there to a myriad of cases all across the state where the parties currently expect to have confidence, be able to communicate with their attorneys in confidence. Their attorneys expect to be able to write down their impressions, their mental impressions in confidence and not have to one day share those with a party that they frankly have never heard of when the communications take place and when the privileged information is created. So for that reason we ask the court to reverse and remand for entry of the protective order. Thank you. Thank you. Case number 1239 should be taken under advisement as agenda number 7. Mr. Schoenfeld, Mr. Layden, we thank you for your arguments this morning. You are excused.